Good morning, and may it please the Court, I'm Joshua Weiss from the Federal Public Defender's Office, here on behalf of Appellant Howard Chen. I'd like to reserve two minutes, and I will keep my eye on the clock. Thank you. The Compassionate Release Statute, Section 3582C1, grants district courts the discretion to consider whether a particular defendant presents individualized factors that, together, amount to extraordinary and compelling reasons for a sentence reduction. The government here is asking this Court to remove one factor from district courts' holistic consideration, arguing that a court should never, not in any case, be able to consider disproportionate sentences that result from prospective changes to mandatory minimums, no matter how extreme a particular sentencing disparity is, or the other factors presented by a defendant. So, counsel, now we've let you complete two whole sentences without interrupting. That's our limit. So, it's a really important issue, and you know there's a circuit split. Could you go right to it, please? Why is the Seventh Circuit wrong? Why is the Fourth Circuit right? Yes, and this issue is very well laid out, I think. I don't want to put it to the brief, but at least by the circuit decisions on point. But we've read them, so. Yes. Okay. I think there are two particular problems with the governments and the Seventh Circuits and those circuit positions that I want to highlight here. The first is that the government is trying to impose an entirely atextual limitation on district courts' discretion, and we get into that particularly in the reply briefs. It's not entirely atextual, right? There's Section 403, right? So Section 403B of the FSA says that the changes to 924C stacking shall apply to every defendant who has not yet been sentenced and prospectively from there on forward. The language is inclusive it's entirely silent about previously sentenced defendants. So you read it to just apply as an undoing of deal. Is that what you're... Moving forward. And it's entirely silent about how this change and the resultant sentencing disparities and other individualized factors that arise because of the previous regime of stacking can interact in the evaluation of a completely separate analysis under a separate statute, the Compassionate Release Statute. So what the government is calling here textual non-retroactivity in the text is really just silence of the text of Section 403B. And whereas the Compassionate Release Statute explicitly has two limitations on district courts' discretion in it. First is 994T that says rehabilitation shall not alone be considered an extraordinary and compelling reason. And second, the statute says that the district court's decision-making analysis of extraordinary and compelling reasons must be consistent with the Sentencing Commission's applicable policy statements. Now this is the second problem I wanted to highlight here. I recognize that there may be a concern that we currently lack guardrails for Compassionate Release because the Sentencing Commission has not currently issued an applicable policy statement. But this is a temporary problem that should not be solved by this court adopting atextual and permanent limitations on the definition of extraordinary. I think we still have that problem after Arruda. We're bound by it. Right. So I don't think this court should be, what I think the government's, without a textual basis, I think the government's arguments amount to essentially policy claims about what should and shouldn't be considered extraordinary and compelling reasons. And the statute explicitly designates the Sentencing Commission when there's a quorum to make those kinds of policy claims, not this court to impose categorical limitations on what district courts should be evaluating. So because of that, exactly, under Arruda, a district court has the discretion to evaluate whether a particular defendant in the totality of the package they present and the interaction of myriad factors, like the First Circuit called it in the Vulcaba, together amount to extraordinary and compelling reasons. I think it would really undermine the structure of the Compassionate Release Analysis and its function as an individualized assessment to just remove one category of factors from the assessment. The holding you just cited sounded, and you didn't necessarily identify it as a holding, so maybe you didn't mean it to be, but it sounded a whole lot more like Lizarraga to me as a C2 analysis than a C1. I was just speaking about our decision that indicates we don't have an applicable policy statement from the Sentencing Commission at this point. That's true. And I think, sorry if I was unclear there, I think some of the government's arguments are in some ways raising alarms about how without an applicable policy statement, there might, there aren't guardrails limiting a flooding of motions here. But this is a temporary problem to the extent there is a problem. I mean, the commission currently lacks a quorum, but the president's nominees already had their hearings in the Sentencing Commission last week. And what the government is trying to do is have this court take the place of the Sentencing Commission by defining those guardrails. Now in terms of the step one versus step two, yeah, I'm talking about extraordinary and compelling reasons. The First Circuit's decision in Rubalcaba I think is a very helpful analysis in talking about how at step one as well, extraordinary and compelling reasons, it's supposed to be taking the defendant's entire package and evaluating whether the interaction of factors they present are extraordinary and compelling. And that's why I think we submitted a letter about a district court decision Rodriguez last week, because I just think it's a really good case study of how this analysis could work in the hands of a district court exercising its discretion. Because there what the district court said is the defendant presented three factors, none of which alone would have been extraordinary and compelling, but the interaction of the disparate sentence he was facing because of prospective changes to mandatory minimums with his rehabilitation and the fact that he had health conditions that demonstrably were lowering his life expectancy, the interaction of that lowered life expectancy with this change in the law was extraordinary and compelling for this particular defendant. And that's how we believe the analysis should be going. So counsel, what is your specific request for relief? We're asking this court to vacate the district court's decision and just remand for reconsideration under the correct legal standard. The district court held that categorically these changes in the law cannot be considered as part of the extraordinary and compelling reasons analysis. And the government, I believe, agrees in their briefing that that was the basis of the district court's decision. By applying the wrong legal standard, the court abuses discretion. And we're not asking this court to be clear to rule that these changes in the law are affirmatively an extraordinary and compelling reason in this or in any other case. We're just asking this court to say that a district court should evaluate this on a case-by-case basis. You know, the particular disparity faced by a defendant along with the other factors they present on an individualized basis. So again, we're really just asking this court to vacate for reconsideration under the correct standard here. But the correct standard that you're automatically extraordinary and compelling reasons to look at the pre-First Step Act disparity. But rather than it is one of many factors that the court has discretion. Exactly. To assess on an individualized basis. You know, and like we talk about, yeah, I think the government's arguments might have had more resonance here if we were arguing that categorically every previously sentenced defendant automatically presented extraordinary and compelling reasons. But that is simply not our argument. A district court might decide, well, particularly extreme sentencing disparities or statements like we had here that the original sentencing judge did not believe the sentence was appropriate. That interacting with the change in the law could be extraordinary. But, you know, I think the Sixth Circuit decision in Hunter presents a good case of where the change in the law would not be extraordinary. That defendant had murdered someone, a state's witness for hire. And the district court always thought the sentence was appropriate. So not extraordinary and compelling there. And then if you were dissatisfied with the resolution, you could come again. If you thought there were abuse of discretion, we could look at it again. Right. If the district court applies the correct legal standard, and then it becomes an abuse of discretion review, like a sentencing review or any other compassionate abuse review. And the government could also appeal if it thinks the district court abuses discretion finding extraordinary reasons in a case where that could also be reviewed for abuse of discretion. But the legal standard, it should be, you know, this could be, as Judge Navarro said, considered as part of the analysis. But it's a de novo. This is a legal error. Exactly. This is an interpretation of the statute that is a de novo question. But an abusive, a legal error is abuse of discretion. Exactly. Yeah. And what we're really talking about here is the interpretation of the statute, which is pure de novo review. I see I'm running low on time, if I could reserve. Thank you very much. We'll hear from the government. Good morning, Your Honors. David Ransom Friedman of the United States. May it please the court. I suppose I'll skip my introduction and skip right to why the Fourth and Tenth Circuits are wrong. I think the key error those circuits made is, in the words of the Fourth Circuit, they held that Congress made paired judgments about retroactivity in the first step back. They held that, on the one hand, Congress made the judgment that this wouldn't be categorically retroactive, but it would be retroactive on a case-by-case basis. But that second judgment, it's not found. Well, or could be. Or could be. I mean, I can imagine it, right? Isn't it consistent with the Fourth Circuit for a sentencing judge to say, I remember you, you're dangerous, right? And not even, right, when doing the analysis, not even get there. But the question is whether this can ever be considered, not whether it's going to be and as I think defense counsel conceded, it wouldn't be automatic relief for the whole class of offenders, but it would make that whole class of offenders eligible for relief. What's wrong with that? Well, it would be inconsistent with congressional intent. Congress said that this amendment should not apply to those who've already been sentenced. And it's not applied retroactively as a matter of law. But Congress did not expressly exclude it from being a consideration. Well, Congress said it shouldn't apply to those who've been sentenced. Yes. But if 924C did apply retroactively, you would have, you know, tomorrow, all new sentencing guidelines ranges, right? Sure, yes. I mean, that would be the same as saying we're going to re-sentence, you'd have to re-sentence everybody, wouldn't you? If 924C would have new sentencing guidelines? If 924C did apply retroactively, I mean, right, immediately, that would be not only a little, significant changes in guidelines, and everybody would be eligible. It would be a significant change. Is that right? Or am I missing that? That's an important point for me. Well, if you're asking if Congress would make it categorically retroactive, just the guidelines? I'm asking if they had said it is retroactive, that would mean eligibility for, I think, probably thousands of people immediately to be re-sentenced. Yes? Yes. Okay. And so they said not retroactive, right? So they're not doing that. That's loud and clear and seems to me to common sense. Yes. But what we're dealing with is something different. The question is whether it can be considered in the basket where somebody tries to reach a very high standard under C-1 to show extraordinary compelling circumstances. What's your best shot that it ought not be available as a consideration? Well, I think to allow someone to be released, to obtain a 20-year reduction in their sentence, even in part based on this change, would be to apply it to them. And Congress made that categorical statement that should not apply to defendants. If you look at Did you just say, you're talking kind of quickly, or maybe my ears are moving slowly. I apologize. But can you go back up about to allow someone to get a 20-year, what did you just say? Well, a defendant would be obtaining basically a 20-year reduction in his sentence. No, no, no. He wouldn't be obtaining anything. Right. There would be consideration. The guidelines might move 20 years, but then the judge goes to work, right? That's just the starting point. I understand that, but I think to say that it's extraordinary for a defendant to be serving a sentence that Congress specifically chose on the front end that he should be serving and chose not to make retroactive once it made this amendment, it's not extraordinary under 35-HUC. Oh, go ahead, please. What about the underlying policy of the First Step Act is to take a look at sentences to see if they are appropriate now? So wouldn't it undermine the purpose of the First Step Act if, categorically, the changes cannot be considered? I don't think so. I mean, this Court has recognized that Congress made a procedural change in the First Step Act. It wanted to expand how defendants could bring these motions. They could bring them themselves, but there wasn't a substantive change, and that's something- Well, but the purpose of it was to allow for sentences to be analyzed, you know, with the passage of time and the recognition that some sentences perhaps were overly punitive at the time. So why isn't considering this passage consistent with the overall goal of Congress in enacting the First Step Act? I think the overall goal for the First Step Act and 3582c1 as well in the Sentencing Reform Act is to provide relief in extraordinary circumstances based on changes in defendants' personal circumstances, things like illness or terminal illness or things that- And do you get that, reach that, do you reach that conclusion because of the first sentencing guideline, the policy statement? Not because of the policy statement. I think you can see that in the legislative history of 3582c1. A defendant's position is essentially that Congress intended to create this general parole statute where district courts have the discretion to decide that sentences are just too long and to disagree with mandatory minimums. Well, they did create c1. Congress created c1. That is certainly true, but- And didn't put very many- They said rehabilitation's not enough. There's two specific things they said that doesn't cut it. But you want us to read in another one. Well, it's in the First Step Act. So to the extent that defendants say it's a textual, again, I think it's in that language that- You mean what is, 904-403 is in the First Step Act? Is that what you're- Yes. And I think 403 should be compared with 404 where Congress actually did make their Sentencing Act retroactive on a case-by-case basis. Congress said that those sentencing changes are retroactive. And it actually said in Subdivision C that district courts don't have to do it. They don't have to grant reduction. So that's case-by-case retroactivity explicitly in the text. You don't have that in Section 403. So I do think that was a meaningful choice. And I think just because Congress didn't specifically make a statement about compassionate release in Section 403, I don't think we should infer that it meant it can be applied to that more general statute. Congress has provided a specific pathway in 2255 for defendants to It's a narrow pathway, but that's what Congress intended. And to allow a defendant to essentially repackage that sort of claim would really undermine Congressional intent. And it would allow defendants to circumvent the careful restrictions Congress has made in 2255. And I think defendants' claim is quite broad in the sense that he says, no factors off limits, even if Congress has said explicitly- But he didn't say no factors off limits. To be clear, this is an important question. Of course. So if you could slow down just a little, please. He didn't say nothing's off limits. He said Congress told us specifically two things are off limits. Right? Rehabilitation. Yeah. And so when you just said that, that's just not defendants' position that nothing's off limits. I mean, to be fair. Is it? I apologize if I mischaracterized it. I could say rehabilitation in the guideline, which is not applicable right now. Policy statement. Yeah. The policy statement. You don't have to apologize. I'm just trying to, you know, just help us out here.  This is an important question and I want to make sure we're narrowing it down. What's your best- Could you go back to the circuit split? Why do you think that the Fourth Circuit has it wrong and the Seventh Circuit has it right? Again, I think it's this holding that there are paired judgments. I don't think there are paired judgments in the First Step Act. There's only one judgment about the retroactivity of Section 403. And I think the Sixth Circuit's decision in Jarvis- What do we do with it? Okay. But the First Step Act did more than that. So if you could slow down right there. What's your best- I think this is an interesting point. Because they do argue, and you know, we have several of these cases on the calendar. Yes, sure. And we keep reading about this, this paired judgment notion. And of course, that's the other circuits have looked at that. The First Step Act did do more than 403, right? It also said defendants, BOP, the Congress clearly wasn't happy with the gatekeeping function there. Yes. They did that. Yes. And you think that wasn't a paired judgment because- I think that was a judgment about the procedural means for bringing First Step Act motions. I don't think it changed the substantive standard. And I think that's actually something this court explicitly said in the Thower decision. But didn't that manifest an intent for people who are serving sentences to be able to get review of those sentences more easily? Based on extraordinary circumstances. Exactly. But the fact that the BOP was not making those motions and Congress changed it so prisoners could bring the motions themselves. Didn't that manifest an intent of Congress, a desire of Congress that the process be more available to prisoners rather than less available? I believe procedurally available. I agree with that. But if you look at the first, this statute 3582C1 has been in place since the 1980s and no court had ever suggested until recently that a non-retroactive sentence- That's because the First Step Act didn't make these changes until recently. And so that brought the possibility into our arena that perhaps there was more of an avenue for people who were not included expressly in the statute to have available relief. Again, Your Honor, I think it was a procedural change. I don't think Congress- Why do you think that? Why do you think it was just procedural? After all, district courts aren't making up the changes in these guidelines for drug offenses, or in this case for the stacking provision. And that's a big change. And it's a congressional statement, right? It's a change contemplated- What's the correct judgment? Their judgment of what would be the correct penalty, whether these things should stack. But I think you're asking us to ignore that. To the extent Congress made a judgment about the stacking provision, it made a judgment- Is that procedural? With respect to the First Step Act, I believe it made a procedural change. And again, I think- In respect to the stacking provisions, was that a procedural change or a substantive change? That was certainly a substantive change in 924C, but what- How do we overlook that? That's Congress's judgment now about what is correct, stacking or not stacking. It seems to me that it is- I want to give you a fair opportunity to respond to this, because it seems to me Congress saying, we disagree with DEAL. We don't agree with that case law, thank you very much, and this is what we intended. So are you asking us to overlook that? I don't think I'm asking you to overlook it. I think I'm asking you to honor Congress's judgment here. What the Eighth Circuit explained is Congress made a judgment that going forward, stacking should not apply prospectively. But it made an explicit choice not to apply it to those who have already been sentenced. Automatically. Automatically, I think just categorically- As a matter of law. As a matter of law, it cannot apply. Again, but I think Congress made that choice that it's not unjust for defendants to be sentenced, to keep serving these sentences. Well, you talk about justice. So you say it's just for- if a person is sentenced one day before the First Step Act becomes effective to get a 20-year sentence, and a person who's sentenced one day after to get a 10-year sentence, you think that's just? There's a disparity, but it's what Congress intended. But I ask you, you're a prosecutor. Prosecutors seek justice. Do you think that's just? I just, I don't think it's up to my personal views, and I don't think it's- Well, as prosecutors, I was in the DA's office for 17 years. As prosecutors, we're supposed to seek justice. So I'm asking you, as a prosecutor, do you see that as a just result? It's the one Congress intended. You didn't answer my question. As a prosecutor, do you see that as a just result? In this case, I think it's a just result. That's what Congress intended. I don't think this court can just disagree with the mandatory minimums. And I think under defendant's position, there would be nothing stopping courts from disagreeing with mandatory minimums today. And whether I agree with them, whether this court agrees with them, it's Congress's prerogative to impose those sentences. And I see them well over my time. I apologize. I didn't want to interrupt. So I just have a question with how we reconcile the circuit split. Because, for example, the 3rd and the 7th say that we should not consider the disparity as an extraordinary and compelling reason. But we can, we being district courts, and I'm sorry, I am a district court student. So, that the district court should not consider it for purposes of determining whether or not there's extraordinary and compelling reason. But we can in determining the 3553A factors. So how do you reconcile that? It seems like that belies the logic of it. It undercuts it. If you're saying we should never consider the disparity in a modification motion, but then even the 3rd and the 7th Circuit are saying you can. So I'm wondering if the distinction really is that it's not automatic, but that it can be a consideration. Because the reality of it is that before Congress made this change, the district court judges were already making these changes, weren't they? And the prosecutors would go along with it. And I've been sitting for 12 years, so I tell you, for a long time. Even in this case, for the six criminal charges, he received a sentence of only 48 months. The guideline range was 155 to 188. That's a significant downward departure. Maybe, likely, I don't speak for anyone else, maybe likely because of the stacking of the 5 and 25. I've seen a lot of those cases where the drug charges, the parties ask me, go ahead, credit for time served, 18 months, even though they're looking at 155 months. Because they know that the stacking is just so huge. And so don't you think a lot of the district court judges have already made that adjustment, legally, but they made the adjustment. And if you were to go back retroactively, automatically, those people would be getting a windfall because the district courts had already cut them a break. So maybe is that why? There's a distinction here between the new cases that are being sentenced. Obviously, those are the ones where the First Step Act really applies. But if it's applied retroactively, you'd actually get a windfall because a lot of the judges and prosecutors and clever defense attorneys were already figuring out a way to make up for the fact that the district courts are getting a penalty more so than what anyone thinks is reasonable. Your Honor, I don't think it would be a windfall. District courts have the ability to make adjustments based on the 35 to PVA factors. That's based on the text. It's just the seriousness of the offense and the nature and circumstance of the offense. I think you can consider mandatory minimums. District courts can disagree with things for policy reasons, but district courts can't. They can't disagree with mandatory minimums. And I think that's the distinction. That's the problem. That's the problem that district courts, that mandatory minimums handcuff the judges, so to speak. And some of the judges who sentenced these defendants expressed the frustration with the sentences that they had to impose. Your Honor, I think that's the same dynamic today. I know a lot of district courts are frustrated today with the mandatory minimums we have right now. And I don't think that If I could just ask one more question. Following up on Judge Navarro's point, I think your point is that, although I may have conflated the government's point in these different cases, but I think your point is that it may be considered under 3553. Is that right? Yes. So by shoving it up to the C-1, although you don't want it considered there, you're treating it as a gatekeeping, right? Yes. Unless you get a first step for eligibility. So unless you can show extraordinary compelling circumstances, then you never get to 3553. So you'd have to show that first in order to get to 3553 under your theory, and then consider it. Yes? Correct. Yes. Thank you for the clarification. You can't get there because the statute doesn't apply retroactively for these cases, right? Right. It's not extraordinary to be serving a sentence that covers... You'd have to have extraordinary based on something else in order to get to it. And that's how this court has interpreted 3582 C-2 in Lazarus-Chacon. Thank you. Thank you, Your Honor. We took you way over your time. We appreciate your indulgence. Today is going to get easier. Rebuttal. Let's give two minutes. We took the government way over time. Thanks very much, Your Honor. Just a couple of points I want to clarify about our position. I think there was some discussion about what the difference between what we're asking for here is and the categorical retroactivity of Section 404B of the FSA. Let's not use the word categorical because that takes my brain to another place. Categorical approach. Understood. It makes us explode. I'll say... Ruin my days. Automatic, I'll say. So Section 404B of the FSA said, every previously sentenced defendant with the crack cocaine disparity automatically is eligible for relief. And then the only question for the district court is, you know, 35 to three factors, do they want to grant relief? But like some of the questioning indicated, that was an automatic gateway into court eligibility. We are not arguing automatic eligibility for every previously sentenced defendant under these other regimes. The point is only that the sentencing disparities that people are facing can be considered in the analysis to determine whether they can get through that gateway of extraordinary and compelling reasons. And there are various ways this could shake out under the district court's discretion. They might say, you know, only a particularly grievous extreme disparity or a statement that the original sentencing, like Judge Rawlinson was indicating, that the sentence was never appropriate. That rises to the level of extraordinary and compelling reasons. But there are going to be people with prior mandatory minimums that do not have extraordinary and compelling reasons. And that is why this is not automatic retroactivity the way 404B is. Okay. So can I get you to... Please. What about his argument about the juxtaposition of 403 and 404 right next door? He's got an argument. And you know, that appears throughout this briefing. So 404 created this automatic retroactivity, and we agree that that is not what happened in 403. 403 had created a more limited class of people that will automatically be subject to a lower mandatory minimum. Anyone who previously offended but was not yet sentenced and everyone moving forward from here. But why isn't his point fair that you're both asking us to read in a little something that Congress didn't expressly state? To be honest, our position really is not about 403. It's about the compassionate release provision. Well, I know. I know. But they have to be read in conjunction. If I were you, my position wouldn't be about 403 either. But we got 403, and you're going to have to grapple with it. And it does seem to me to be fair. And you know, there's some really bright judges on the Seventh Circuit and on these other circuits who have come to the other... We take that very seriously. They've come to the opposite result. Am I right that you're both asking us to read in something Congress didn't really tell us? Well, the point we're making is there's only two things that are off the table for extraordinary... I'm not trying to avoid the question. It's just for extraordinary and compelling reasons. So 403, it's not as a matter of law creating extraordinary and compelling reasons. It's just it's a very notable fact about certain defendants that... And I think the First Circuit's decision, I think, is very helpful. Can you finish that? It's a very notable... Notable fact that some defendants are serving a century longer than they would have served under the current law. And I was skipping ahead in my sentence. But the concurrence in Ruvalcaba really points this out well. It talks about a defendant who was serving 130 years tax sentence. Tse would be serving 30 years for his first ever criminal offense. And the court there says, look, maybe not every one of these offenders presents extraordinary and compelling reasons. But some of them surely do because 403 was silent about this. And compassionate release has always been read to be a backstop for unforeseen circumstances that might come up in individual cases. But counsel, is it fair to say that Congress did not tell us how to deal with the cases that were not covered in its enactment? Yes. And again... You're asking us to read in one thing to say that the passage of the act may be considered. And the government is asking us to read in that it may not be considered. Well, we're not asking 403B to apply to defendants. We're just saying that that should be considered as part of this other provision. Right, but that's not in the statute. Isn't the answer to Judge Robinson's question, yes? I'm waiting. Well... I mean, you can say that without losing your case. No, no, no, I understand. I'm not trying... My apologies. I'm not trying to avoid the question. I just... Really, the way I see this is we're not asking 403, the changes of the First Step Act, to apply. We're being asked... We're asking for that to just... Your answer is taken literally. If you're asking us to apply the statute as literally written, you lose. So you have to be asking us to read something else other than what the statute says. Because if we say the statute does not apply retroactively, period, you lose. So you're asking us to say... 403 statute. Right. If I could push back a little bit there, Your Honor, and I'm not trying to be difficult here, but the... I think if we were arguing that every single prior defendant... No, we're not attributing that argument to you. Yeah. Here's another way I could put it, if I can. But you might want to just get the question first. Yeah, well... I think you're missing it. The courts talk about compassionate release as considering any universe of experiences. So we're just saying that the silence in the statute means that it didn't remove this. And to the extent we're saying, read something into the silence, it's just that there wasn't... read into section 403, if that makes sense. And I just want to point out, the government was talking about going below mandamins. But even the courts that are on the other side of this acknowledge that compassionate release can be used in individual cases to go below a mandatory minimum. Thacker explicitly said this at page 574. So it's, again, just part of the whole package of extraordinary and compelling reasons is what we're looking for here. Thank you, counsel. Thank you to both counsel for your helpful briefing and your helpful arguments in this very important case. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, Navarro